UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PRUCO LIFE INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-87** |
| **EUGENE FRANCIS DWYER, ET AL** | **SECTION: P (1)** |

## ORDER AND REASONS

This case involves competing claims to the proceeds of a $750,000 life insurance policy between the deceased policy owner's former fiancé, on one side, and the decedent's estate on the other. For all the reasons that follow, the Motion for Summary Judgment filed on behalf of Sarah R. Robert, in her capacity as Defendant-in-Interpleader and Cross-Claimant (Doc. 25), is **GRANTED**.

## BACKGROUND

Matthew D. Dwyer ("Dwyer") died on June 26, 2020. In 2017, Dwyer purchased a $750,000 life insurance policy ("the Policy") from Pruco Life Insurance Company ("Pruco"). In his policy application to Pruco in September 2017, Dwyer designated Sarah R. Robert ("Robert") as the primary – and sole – beneficiary of the Policy's proceeds.[1] In a section called "Beneficiary Details," the application asked for the beneficiary's relationship to the proposed insured, and Dwyer identified Robert as his "fiancée."[2] No contingent beneficiaries were designated.[3] Pruco then issued the Policy to Dwyer with Robert listed as the sole beneficiary.[4]

As a result of Dwyer's June 26, 2020 death, Policy death benefits in the amount of $750,000.00 and a premium refund in the amount of $23.33 (together, the "Death Benefit")

---

[1] Doc. 25-6 at 2.
[2] *Id.*
[3] *Id.*
[4] Doc. 25-7.

became due to a beneficiary or beneficiaries.[5] Although Dwyer and Robert never married and had ended their relationship prior to Dwyer's death, Robert remained the sole named beneficiary under the Policy at the time of Dwyer's death in June of 2020.[6]

Robert asserted a claim for the Death Benefit with Pruco in November of 2020.[7] Dwyer's father and brother, as Independent Co-Administrators of Dwyer's Succession, ("the Estate") also asserted a claim with Pruco, seeking payment of the Death Benefit to the exclusion of Robert, on the basis that Dwyer and Robert never married.[8] In particular, the Estate argued, "the use of the word 'fiancée' indicates that [Robert's] designation was conditional, and she was being named as beneficiary of this policy in contemplation of marriage."[9]

As a result of the competing claims, on January 14, 2022, Pruco brought this interpleader action, naming Robert and the Estate as defendants, so the defendants-in-interpleader could resolve their competing claims to the proceeds of the Policy. Pruco then deposited the Death Benefit with the Court and was voluntarily dismissed as a party to this action.[10]

On May 2, 2023, Robert filed this Motion for Summary Judgment, asking the Court to find that she is the beneficiary of the Policy and is entitled to receive all funds presently held in the registry of the Court.[11] The Estate opposes the motion.[12]

---

[5] Doc. 1 ¶¶ 10–11.
[6] Doc. 25-7.
[7] Doc. 25-11.
[8] Docs. 25-9, 25-10.
[9] Doc. 25-9.
[10] *See* Doc. 15.
[11] *See* Doc. 25.
[12] *See* Docs. 26, 27.

**LEGAL STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[14] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[15] "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."[16]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[17] "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[18]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[19] The burden then

---

[13] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398–99 (5th Cir. 2008).
[15] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.
[16] *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).
[17] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[18] *Id.* at 1265.
[19] *See Celotex*, 477 U.S. at 325.

shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing a genuine issue of fact exists.[20] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution.[21]

## LAW AND ANALYSIS

In her Motion, Robert argues the Policy clearly and unequivocally states she is the beneficiary. She further contends because the language of the Policy is clear and unambiguous, there is no need to consider extrinsic evidence to determine the parties' intent. According to Robert, there is no genuine issue of material fact, and she is entitled to judgment as a matter of law.

Under Louisiana law, an insurance policy is a contract that constitutes the law between the parties, and it must be interpreted in accordance with the general rules of contract interpretation set forth in the Louisiana Civil Code.[22] The extent of insurance coverage is determined by the parties' intent as reflected by the words in the policy.[23] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[24] The determination of whether a contract is clear or ambiguous is a question of law.[25]

This Court finds the Policy clearly and unambiguously provides that Sarah R. Robert is the sole beneficiary. The use of the term "fiancée" after Robert's full name merely designates her

---

[20] *See id.* at 324.
[21] *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).
[22] *Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999) (citing LA. CIV. CODE art. 1793); *Ledbetter v. Concord Gen. Corp.*, 665 So. 2d 1166, 1169 (La. 1996); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736 (La. 1994).
[23] LA. CIV. CODE art. 2045; *Peterson*, 729 So. 2d at 1028 (citing *Ledbetter*, 665 So. 2d at 1169).
[24] LA. CIV. CODE art. 2046.
[25] *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 630 So.2d 759, 764 (La. 1994) (citation omitted).

4

relationship to Dwyer at the time of the execution of the policy; it gives no indication of any intent to make someone other than Robert the beneficiary.[26]

The Estate contends, despite the plain language of the policy, Robert is not entitled to the proceeds because (1) the proceeds of the life insurance policy were a gift in contemplation of marriage that must be returned to the Estate because the marriage never occurred, and (2) interpreting the Policy as written results in an absurd consequence.

The Court is not persuaded by the Estate's arguments. As the Louisiana Supreme Court has stated,

> It is well-settled in Louisiana that the proceeds of life insurance, if payable to a named beneficiary other than the estate of the insured, are not considered to be a part of the estate of the insured. *They do not come into existence during his life, never belong to him, and pass by virtue of the contractual agreement between the insured and the insurer to the beneficiary. Life insurance proceeds are not subject to Civil Code articles relating to donation inter vivos* or mortis causa, nor are they subject to community claims or the laws regarding forced heirship.[27]

In other words, the life insurance policy's death benefits never belonged to Dwyer.[28] Instead, these proceeds came into existence after his death and are "exclusively owned by the named beneficiary."[29] The Policy's death benefits are not subject to the Louisiana Civil Code articles relating to donations inter vivos, i.e., the articles that form the basis of the Estate's

---

[26] *See S. Farm Bureau Life Ins. Co. v. Cox*, 247 So.3d 999, 1003 (La. Ct. App. 2018), *writ denied*, 252 So. 3d 486 (La. 2018) ("The inclusion of the word 'wife' after the beneficiary's name designates the person's relationship at the time of the execution of the policy."); *id.* at 1004 ("The qualifier 'wife' after the beneficiary's full name gives no hint of any intent to make one other than the named person the beneficiary.").
[27] *Fowler v. Fowler*, 861 So. 2d 181, 184 (La. 2003) (quoting *T.L. James & Co. v Montgomery*, 332 So.2d 834, 847 (La. 1975)) (emphasis added).
[28] *See id.*
[29] *New York Life Ins. & Annuity Corp. v. Cannatella*, 550 F. App'x 211, 214 (5th Cir. 2013) (quoting *Allianz Life Ins. Co. of N.A. v. Oates,* 756 So.2d 677, 679 (La. Ct. App. 2000)).

argument that a gift conditioned upon a future marriage must be returned if the marriage does not occur.[30]

The Estate also argues that interpreting the Policy as written leads to an absurd consequence. In particular, the Estate contends Dwyer "clearly intended for the life insurance proceeds to be used for his business in the event he should pass," and if the money goes to Robert it "will no longer be used for its intended purpose, resulting in an absurd consequence."[31] The Estate does not point to, nor does this Court find, anything within the four corners of the Policy that indicates Dwyer "clearly intended" for the Policy's proceeds to be used for his business in the event of his death. To the contrary, the Policy clearly and unambiguously names Sarah R. Robert as the sole primary beneficiary, and no contingent beneficiaries were named. That the Policy's death benefit proceeds should be paid to Robert, the policy's sole beneficiary, even though she and Dwyer never married, is not an inherently absurd consequence.[32] Because the Policy is clear and unambiguous as written and leads to no absurd consequences, no further interpretation need be made in search of the parties' intent.[33]

The Estate relies on *Succession of Gaston v. Koontz*, 49 So. 3d 1054 (La. Ct. App. 2010), in support of its proposition that "precedent requires a denial of this summary judgment motion."[34] In *Succession of Gaston*, however, the Succession was suing the sister ("Koontz") to enforce an

---

[30] *See Fowler*, 861 So. 2d at 184.
[31] Doc. 26 at 6.
[32] *See S. Farm Bureau Life Ins. Co.*, 247 So. 3d at 1004 ("The Civil Code does not define the concept 'absurd consequences,' but the jurisprudence makes clear that just because a contract is a bad deal for someone is not grounds for undermining its terms.") (citing *Gibbs Const. Co. v. Thomas*, 500 So.2d 764 (La. 1987)).
[33] LA. CIV. CODE art. 2046; *see also Standard Life Ins. Co. of S. v. Franks*, 278 So. 2d 112, 114 (La. 1973) ("The contract of insurance contained a provision for change of beneficiary. The deceased did not exercise the right to change the beneficiary. We need not inquire into whether he desired to change the beneficiary, for we are bound by the unambiguous contract which names the beneficiary."); *S. Farm Bureau Life Ins. Co.*, 247 So. 3d at 1004 ("The insured named his wife as beneficiary of an insurance policy; the couple later divorced; and the insured took no action to change beneficiary. The policy, application, and change of beneficiary form are free of ambiguity. The extrinsic evidence is simply irrelevant.").
[34] Doc. 26 at 6–8.

oral agreement between Koontz and the decedent that was made prior to the decedent's death regarding how the life insurance policy proceeds should be distributed.[35] Here, the Estate has made no allegation either in its pleadings or its present opposition that Robert and Dwyer had an oral agreement as to how the proceeds of the Policy should be distributed. Furthermore, even if they had, it would not support the Estate's argument that the Estate, as opposed to Robert, is entitled to receive the proceeds. In *Succession of Gaston*, there was no contention, like in this case, that Koontz was not the proper beneficiary under the Policy.[36] Rather, after the funds were distributed to Koontz, the Succession sought to enforce the oral agreement between Koontz and decedent to have the funds distributed in the agreed-upon manner.[37] *Succession of Gaston* is therefore unpersuasive and inapplicable to the case at hand.

## CONCLUSION

For all the foregoing reasons, the Court finds Sarah R. Robert is the legal beneficiary of the death benefit proceeds from Pruco Life Insurance Policy number L9565721, and she is entitled to receive the interpleader funds deposited into the registry by Pruco and presently held by the Court. Defendant-in-Interpleader and Cross-Claimant Sarah R. Robert's Motion for Summary Judgment (Doc. 25) is, therefore, **GRANTED**.

**IT IS FURTHER ORDERED** that the pretrial conference and bench trial presently scheduled for June 29, 2023, and July 17, 2023, respectively, are hereby **CANCELED**.

New Orleans, Louisiana, this 28th day of June, 2023.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[35] *Succession of Gaston,* 49 So. 3d at 1056.
[36] *Id.*
[37] *Id.* at 1055.